STATE OF CONNECTICUT *v.* DOUGLAS YOUNG
(AC 23482)

Flynn, West and DiPentima, Js.

---

Argued January 6—officially released March 2, 2004

*Maria Cahill*, with whom, on the brief, was *Ronald F. DeMatteo*, special public defender, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Kim L. McCabe*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Douglas Young, appeals from the judgment of the trial court finding him in violation of probation pursuant to General Statutes

§ 53a-32, revoking his probation and sentencing him to serve the entire unexecuted portion of his original sentence.[1] On appeal, the defendant claims that the court (1) improperly denied his motion in limine and incorrectly allowed evidence relative to an alleged August 3, 2001 shooting incident to be admitted,[2] and (2) unjustly sentenced him to serve the remainder of his prior sentence. Because we conclude that the court did not abuse its discretion in hearing and admitting evidence of the underlying crime to which the victim of the intimidation was a witness or in imposing the entire unexecuted portion of the original sentence, we affirm the judgment of the trial court.

The chronology of certain events is important to our understanding of the defendant's claims. On April 14, 2000,[3] the defendant was sentenced after being found guilty of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (b) and carrying a pistol without a permit in violation of General Statutes § 29-35. Only seven months later, on November 15, 2000, the defendant, although still in the legal custody of the commissioner of correction, was released from incarceration as part of a transitional supervised community release program. On August 3, 2001, approximately eight and one-half months after his being placed on supervised release, Latasha Williams observed the defendant, known by the nickname "Bolo," shooting a

---

[1] We note that the court imposed a seven year sentence on the defendant as exemplified in the signed judgment and not the eight years that the court mentioned during the sentencing proceeding.

[2] Judge Iannotti denied the motion in limine after finding that the evidence sought to be excluded was more probative than prejudicial.

[3] We note that both the state's brief and the arrest warrant application regarding the witness intimidation charge incorrectly state the date of the defendant's original sentence. The state's brief stated that he was sentenced on July 26, 2000, and the warrant application stated that the date was July 26, 2001. The defendant correctly states that the sentence date was April 14, but cites the wrong year. The correct date is April 14, 2000.

gun on the street near her friend's children. She subsequently called the police, and on August 6, 2001, the defendant was arrested. On November 13, 2001, while still being held on pretrial detention in connection with his arrest for the August 3, 2001 shooting, the defendant's probation commenced on the April 14, 2000 sentence. The defendant was released on bond on December 2, 2001. On February 12, 2002, according to Williams, she encountered the defendant in a store and he asked her "why would [you] go through this, you know, none of this happened, blah, blah, blah." She went on to say, "Basically, I felt it was a threat."

The defendant was charged with a violation of probation after he was arrested for intimidation of a witness in violation of General Statutes § 53a-151a. At the violation of probation hearing, the court admitted testimony from Williams and other witnesses regarding the August 3, 2001 shooting and the February 12, 2002 conversation with Williams. Subsequently, the court found that during his probation, the defendant "[had] held an entire community in custody. At least one person here, if not more, is living in fear . . . ." The court revoked his probation and sentenced him to serve the remaining seven years of his sentence. The defendant now appeals.

I

The defendant first claims that the court improperly denied his motion in limine that sought to preclude the admission of testimony regarding the shooting and incorrectly allowed evidence relative to this incident. The defendant argues that this testimony was inadmissible prior misconduct and was not relevant to the probation violation because this incident occurred while he was still on supervised release but before his probationary period began. Therefore, according to the defendant, this evidence merely demonstrated prior misconduct, which was more prejudicial than proba-

tive. The defendant argues that he was denied his right to a fair hearing because without this information, it was likely that a violation of probation would not have been found or that his probation would not have been revoked. We do not agree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [defendant] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 227, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002); see also *State* v. *Ferraiuolo*, 80 Conn. App. 521, 534–35, 835 A.2d 1041 (2003).

The defendant argues that the testimony regarding the shooting incident was inadmissible evidence of prior misconduct. "[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 392, 796 A.2d 1191 (2002). However, it may be admissible for other purposes, such as to prove knowledge, intent or motive. Id. "To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Internal quotation marks omitted.) *State* v.

*Fernandez,* 76 Conn. App. 183, 187, 818 A.2d 877, cert. denied, 264 Conn. 901, 823 A.2d 1220 (2003).

The testimony regarding the shooting incident was extremely relevant and material. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *Jewett* v. *Jewett,* 265 Conn. 669, 679–80, 830 A.2d 193 (2003).

In this case, the shooting incident and the witness intimidation were not two unrelated incidents, but were integrally intertwined. To prove witness intimidation, the state had to establish that the person charged believed that an official proceeding was pending or about to be instituted against him and that such person used, attempted to use or threatened the use of physical force against a witness. See General Statutes § 53a-151a. To prove that the defendant believed that an official proceeding was possibly pending and that the person claiming intimidation had observed this shooting crime and was in fact a witness, the state was required to establish the defendant's knowledge of the alleged crime. The testimony regarding this crime also was necessary to inform the court of the defendant's motive for the criminal behavior by which he had violated the terms and conditions of his probation. The court could not separate the two incidents, and in fact, it was not required to do so. The testimony regarding the shooting incident was sufficiently relevant to be admissible.

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue

prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the [fact finder]." (Internal quotation marks omitted.) *State* v. *Ciccio*, 77 Conn. App. 368, 386–87, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251 (2003).

The evidentiary standard for probation violation proceedings is broad. We held in *State* v. *Russell*, 58 Conn. App. 275, 280–81, 752 A.2d 59 (2000), that the court "may also consider the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing hearing. . . . The court may, therefore, consider hearsay information, evidence of crimes for which the defendant was indicted but neither tried nor convicted, evidence of crimes for which the defendant was acquitted, and evidence of indictments or informations that were dismissed." (Internal quotation marks omitted.) Id.

The defendant concedes that the testimony regarding the alleged shooting was probative, but makes the argument that the testimony was more prejudicial than probative because without this evidence, the only portion of the witness' testimony the state could have offered was that she felt threatened by the defendant. Therefore, he argues that the court must have based its ruling primarily on the facts of the alleged shooting, which occurred before the period of probation began. We find this argument meritless. Information regarding the alleged shooting was necessary for the adjudication of the charged probation violation. That information pertained to the defendant's motive to intimidate the witness and to induce her to withhold her testimony as well as to his knowledge of possible criminal prosecution. It established that the victim was actually a

witness to sparks coming from the defendant's gun, accompanied by the sound of gunfire on August 3, 2001, and her reasons for feeling intimidated. This was not a trial to the jury, but rather a hearing before the court where prejudice was unlikely. See *State* v. *Hoskie*, 74 Conn. App. 663, 669, 813 A.2d 136, cert. denied, 263 Conn. 904, 819 A.2d 837 (2003). The February 12, 2002 incident was inextricably connected to the August 3, 2001 shooting. The court did not abuse its discretion in denying the motion in limine and allowing evidence regarding the shooting incident.

## II

We next turn to the defendant's claim that the court unjustly sentenced him to serve the remainder of his prior sentence. We do not agree.

Under § 53a-32, once the court determines that a violation of a condition of probation has been established, it proceeds to determine whether the defendant's probationary status should be revoked. *State* v. *Jones*, 67 Conn. App. 25, 28, 787 A.2d 43 (2001). The court is vested with broad discretion in determining, on the basis of the entire record, whether the sentence of probation should continue or be revoked, and the court may require the defendant to serve the sentence imposed or impose a lesser sentence. Id. An abuse of discretion standard is applied when reviewing a court's revocation of probation and imposition of a sentence. Id. Every reasonable presumption is given in favor of the court's ruling, and reversal is required only when the abuse of discretion is manifest or an injustice has clearly been done. Id., 28–29. When determining whether to revoke probation, a court must consider the beneficial purposes of probation. *State* v. *Bordeleau*, 72 Conn. App. 33, 41, 804 A.2d 231 (2002). However, the probationer's interest in liberty and rehabilitation

must be balanced against the need to protect the public. Id.

The court heard evidence from the defendant's probation officer, who testified that the interest and safety of society superseded any value of probation for the defendant. The court also noted that "what the defendant has done here . . . undermines the very sanctity of the courtroom. Intimidation of a witness is an extraordinarily serious matter." It was within the court's discretion to impose the remainder of the defendant's sentence, and we do not find imposition of the entire seven year unexecuted portion of the sentence unjust, excessive or an abuse of the court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.